FILED

2007 Mar-21  AM 09:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | 2:02-cr-00250-KOB-JEO |
| | ) | 2:05-cv-08066-KOB-JEO |
| JAMES HOLLIS BENDER, | ) | |
| | ) | |
| Defendant/Movant. | ) | |

## <u>MEMORANDUM OPINION</u>

The defendant has filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. (Motion).[1] After a full opportunity to review the motion, the court finds that it is due to be denied.

## BACKGROUND

The defendant was indicted by the June 2002 Grand Jury in a seven count indictment. The indictment charged him with five counts of employing, using, persuading, inducing, and enticing a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct (Counts One through Five), in violation of 18 U.S.C. § 2251(a), and knowingly possessing material that contained images of child pornography (Counts Six and Seven), in violation of 18 U.S.C. § 2252A(a)(5)(B).

The defendant initially pled not guilty. Counsel was appointed to represent him. He entered pleas of guilty on November 7, 2002, to Counts One, Two, Six, and Seven. The plea agreement provided that the government would recommend that Counts Three, Four, and Five be

---

[1]The motion is located at document 1 in the matter of *James Hollis Bender v. United States*, 2:05-cv-08066-KOB-JEO (hereinafter "05-08066"). The pleadings in *United States v. James Hollis Bender*, 2:02-cr-00250-KOB-JEO and 05-08066 are located in the same file, resulting in some duplicate numbers.

dismissed at the time of sentencing.  In addition, the government agreed to recommend that the defendant be sentenced based on an upward departure to a level in the court's discretion from the Sentencing Guideline range which was calculated by the government and the probation office to be at level 34 (151 to 188 months custody).  The government further agreed to recommend the maximum term of supervised release, along with the standard sex offender special conditions of supervised release.  It was understood by the parties that the defendant would oppose the upward departure and ask the court to impose a different sentence from that recommended by the government.  The defendant waived his right to appeal the convictions in the case; however, he maintained his right to appeal any sentence the court may impose.

The defendant was sentenced on March 7, 2003, in part, to the custody of the Bureau of Prisons for 240 months on Count One and 60 months on Counts Six and Seven, all to run concurrently; and 125 months on Count Two, to run consecutive to the sentence on the other counts; for a total custodial sentence of 365 months.  The defendant filed an appeal of his sentence.

On appeal, he asserted that this court improperly (1) denied him a sentence reduction for "acceptance of responsibility," (2) enhanced his sentence for obstructing justice, and (3) departed upward in sentencing him.  The Eleventh Circuit Court of Appeals disagreed, finding the claims to be without merit.  The sentence was affirmed and a mandate issued on March 18, 2004.  (Doc. 52 at 9).  The United States Supreme Court denied his application for a writ of certiorari on June 21, 2004.  *Bender v. United States*, 542 U.S. 932 (2004).

Beginning March 23, 2004, the defendant made numerous requests and motions for discovery materials and various documents and pleadings associated with this case.  (See Doc. 51

2

(March 23, 2004), 54 (May 17, 2004), 56 (January 13, 2005), 57 (February 15, 2005)).  He has also requested that the court assist him in obtaining a rehearing of his direct appeal.  (Doc. 59).  In response, the court has denied his requests, informed him that his requests should be directed to counsel, and informed him of the importance of filing any motion to vacate or set aside his sentence within the one-year statute of limitations.  (Doc. 55; Doc. Entry dated April 1, 2005).[2]

The defendant filed additional motions and requests for documents.  (Doc. 61, 62 & 63).[3] The court again denied these matters and informed the defendant of the need to timely file his motion pursuant to 28 U.S.C. § 2255.  (Doc. Entry dated June 18, 2005).

On July 11, 2005, the defendant filed a motion for additional time to file a motion pursuant to § 2255.[4]  (Doc. 64).  The court denied the motion and informed the defendant of the importance of filing his § 2255 motion in a timely manner.  (Doc. Entry dated July 25, 2005).

The defendant filed his motion to vacate on August 11, 2005.  Therein, he alleges that (1) his conviction was obtained by the use of illegally obtained evidence; (2) his sentence was improperly enhanced in violation of the Supreme Court's holding in *United States v. Booker/Fanfan*; (3) his conviction was obtained through the use of a forced confession; (4) his guilty plea was taken at a time the defendant was suffering from "physical/psychological abuse and over-medication;" (5) he was denied effective assistance of counsel; (6) the prosecutor

---

[2]Because the defendant also complained of the treatment he received while he was incarcerated in the local county jail, the Clerk of the Court was directed to provide him with the 42 U.S.C. § 1983 forms for his use.  (Doc. Entry dated April 1, 2005).  In an order dated June 18, 2005, the court directed counsel for the defendant to provide him with copies of his "appeals" to the extent not otherwise provided.  (Doc. Entry dated June 20, 2005).

[3]The defendant also sent various letters to the Clerk of this Court and to the Clerk of the Court for the Eleventh Circuit Court of Appeals requesting a copy of his writ of certiorari.  (These documents are located on the "left side" of the court's file in this matter).

[4]The defendant also filed a letter on July 18, 2005, with the court complaining that he had not received a copy of his writ of certiorari from counsel.

presented false testimony, suppressed beneficial evidence, presented misleading arguments in
opening and closing arguments, and presented "biased" evidence; (7) the trial court lacked
jurisdiction to hear the case; and (8) he was denied effective assistance of counsel on appeal.
(Motion at 5-6 & Attachment 1-4).

The court entered an order on August 17, 2005, requiring the United States to show cause
why the relief requested should not be granted.  (Doc. 3 (05-08066)).  The United States
responded on October 6, 2005, asserting that the motion was untimely in that it was filed beyond
the statute of limitations.  (Response at 1).[5]  It also asserted that the claims were without merit.
*Id*.  The court next informed the defendant that he would have fourteen (14) days to file a reply to
the government's response.  (Doc. 6 in 05-08066).

The defendant then submitted an affidavit on October 31, 2005, complaining that his
former trial counsel had not provided him with a copy of his application for a writ of certiorari
with the United States Supreme Court.  (Doc. 65).  He further requested that the court order
former counsel or the United States to provide him a copy of the same.  The court declined to
enter such an order.  (Docket Entry dated November 8, 2005).  The court further informed the
defendant that his response was due by November 21, 2005.  *Id*.  Finally, the court informed him
that if he intended to revise his motion, he could do so only upon a showing of why the new issue
had not been raised previously.  *Id*.

The defendant also filed a motion to compel requesting disclosure of various documents,
including grand jury information, transcripts, copies of docket sheets, copies of videos related to
his case, copies of urinalysis tests, written reports of witnesses, DHR reports concerning the

_____

[5]The response is located at document 5 in 05-08066.

victim, and medical records.  (Doc. 7).  On April 17, 2006, the defendant filed an amended

motion to compel disclosure of evidence.  (Doc. 8 in 05-08066).  On August 15, 2006, he filed an

inquiry about his deadline for any further amendment to his motion to vacate his sentence

pursuant to 28 U.S.C. § 2255.  (Doc. 9 in 05-08066).  The court denied his motion to compel

disclosure of the various records and afforded him until September 7, 2006, to file a response

addressing, among other things, the matter of the statute of limitations.  (Doc. 10 in 05-08066).

The court further informed the defendant that after that date this matter would be deemed to be

under submission.  *Id*.  On September 6, 2006, he filed an amended motion to vacate his

conviction and sentence asserting that the evidence regarding the computer disc and hard drive

that was used to enhance his sentence for obstruction of justice was already in the possession of

the Federal Bureau of Investigation prior to his conversations concerning the evidence.  (Doc. 11

in 05-08066).  He also submitted various medical records in support of his motion to vacate.  *Id*.

## DISCUSSION

### Statute of Limitations

As noted above, the United States initially contends that the defendant's claims are

procedurally precluded from review premised on the one-year statute of limitations.  Pursuant to

28 U.S.C. § 2255, there is a one-year statute of limitations within which a motion to vacate a

conviction must be filed.  The defendant's conviction became final on June 21, 2004.  Therefore,

the one year period in which to file a petition pursuant to Section 2255 ended on June 21, 2005.

28 U.S.C § 2255 at ¶ 6.  The present motion was not filed until August 3, 2005,[6] which is over

---

[6]The court has used the date that the defendant signed the motion instead of the day it was filed with the Clerk of the
Court.

two years after the expiration of the applicable statute of limitations.  Accordingly, the

defendant's claims are barred from review absent a showing of actual innocence or equitable

tolling.

### Actual Innocence

In *Bousley v. United States*, 523 U.S. 614, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998), the

Supreme Court discussed the "actual innocence" standard when a post-conviction challenge to a

guilty plea is procedurally defaulted by failing to raise it on direct appeal.  The Court, in

evaluating the defendant's challenge to the guilty plea, noted the following:

> Where a defendant has procedurally defaulted a claim by failing to raise it
> on direct review, the claim may be raised in habeas only if the defendant can first
> demonstrate either "cause" and actual "prejudice," *Murray v. Carrier*, 477 U.S.
> 478, 485, 106 S. Ct. 2639, 2643-2644, 91 L. Ed. 2d 397 (1986); *Wainwright v.
> Sykes*, 433 U.S. 72, 87, 97 S. Ct. 2497, 2506-2507, 53 L. Ed. 2d 594 (1977), or
> that he is "actually innocent," *Murray*, 477 U.S., at 496, 106 S. Ct., at 2649-2650;
> *Smith v. Murray*, 477 U.S. 527, 537, 106 S. Ct. 2661, 2667-2668, 91 L. Ed. 2d
> 434 (1986).

*Bousley*, 523 U.S. at 622.  The Court also stated that to establish "actual innocence" a petitioner

must demonstrate "that, '"in light of all the evidence,"' 'it is more likely than not that no

reasonable juror would have convicted him.'"  *Bousley*, 523 U.S. at 623, *quoting Schlup v. Delo*,

513 U.S. 298, 327-28, 115 S. Ct. 851, 867-68, 130 L. Ed. 2d 808 (1995) (quoting Friendly, *Is

Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. Chi. L. Rev. 142, 160

(1970)).  The Court has also noted that "'actual innocence' means factual innocence, not mere

legal insufficiency."  *Bousley*, 523 U.S. at 623.  "In order to pass through the actual innocence

gateway, a petitioner's case must be 'truly extraordinary.'"  *Schlup*, 513 U.S. at 327, 115 S. Ct. at

867.

Nothing before this court demonstrates that the defendant is actually innocent. To the contrary, the plea colloquy concerning the factual basis for the plea clearly demonstrates that the Defendant is actually guilty. It provides in relevant part as follows:

Should the case go to trial, the government would expect the evidence to be in substance as follows: We would have testimony from the victim and from her mother that in approximately January of 2000, the defendant moved in with the two of them. We would show at the time the defendant moved in with the victim the victim was fourteen years old.

The victim would testify on approximately March 17th of 2000, she and the defendant first engaged in sexual acts. We would show that in April of 2000, the defendant and the fourteen year old victim were discovered by the mother at a local motel and the Jefferson County Sheriff's Department were called.

We would show that approximately June of 2000, that the defendant began videotaping sex acts that he was engaging in with the fourteen year old victim. We would confirm that through evidence that was obtained from a search warrant executed by the Jefferson County Sheriff's Department which found, among other things at the defendant's residence, a video tape of the defendant and the child having sex which was date stamped or time stamped June 23rd of 2000.

The victim would testify that from about June of 2000 continuing up to March of 2001, the defendant videoed her having sex with him virtually every day after she came home from school.

We would show that based again on evidence obtained from the search warrant that another video tape was discovered, which is charged in a separate count of the indictment, count two, that video tape showed the defendant and the victim having sex and showed the date of August 12th of 2000.

We would show that on May 12th of 2002, according to the victim's mother, she returned to her home and found that the home had been vandalized. She would testify that the defendant at that time either had keys to her house or that he was in fact or had been in fact employed as a locksmith and had tools which would have enabled him to get in the house. She would testify that the house had been vandalized on several occasions prior to that.

We would show at that time that there were pictures left in the house on the computer belonging to the victim child and her mother, those were hard copy pictures of the defendant and the child engaging in sexual acts.

We would show that contemporaneously with the pictures being left there on or about that time that the defendant had been threatening the mother if she did not continue to engage in sexual acts with him, that he would publish the pictures throughout the victim's school where she went to high school.

We would have testimony from the victim that on one occasion he had left an envelope at the office desk at the high school for her sealed and in that envelope there were pictures of the victim and the defendant engaged in sexual acts.

We would show that on June 11th of 2002, the defendant was arrested in Jacksonville, Florida. He was subsequently interviewed by the FBI and the United States Postal Inspection Service.

During that interview, he admitted having sex, various types of sexual acts repeatedly with the victim in this case beginning when she was fourteen years old and continuing after he took her to Mississippi to marry her when she was fifteen years old.

He reviewed various hard copies or print copies of images of he and the child engaging in sexual acts. He identified himself as being the person who was engaged in sex with the child. He also gave consent to search his briefcase, vehicle and a storage area.

We would show based on that search there were approximately twenty pictures of the defendant and the child engaged in sexual acts. There were also located during that search two computer disks with images of the child and the defendant engaged in sexual acts. Related again to one of the other counts, found at the time of the search of the storage area in the vehicle was one of the victim's school papers from the past semester which the defendant had taken from her home.

We would show that as to the interstate commerce nature that all these images were taken by a camera that contained interstate and foreign components. The camera had in fact been made in Japan. The defendant admitted during the interview this was the camera he had used to generate the images of himself and the victim having sex.

We would also show that the tape itself, the tape that was used or the various tapes that were used to make these images or to produce these images had in fact been made or manufactured with interstate or foreign components; that is, that they were not made inside the State of Alabama.

We would have evidence based on the volume of the tapes that were found that the defendant had duplicated these tapes several times.  During the interview that he had with the FBI and U. S. Postal Inspection Service, the defendant admitted that he did make copies of these tapes because he played them back so many times the quality of the tapes became poor.

Again, Your Honor, that is what we would expect the substance of the evidence to be.

And I would, I guess, end with the evidence as to count seven.  That would have been the time that the Jefferson County search warrant was executed at the defendant's home and various video tapes of the defendant engaged in sexual acts were located.

That is what we expect the evidence to be in substance on the counts the defendant is pleading to.

THE COURT: Mr. Phillips, let me ask you this.  You mentioned information that the defendant provided to the FBI and the United States Postal Service.

Was this in a custodial setting?

MR. PHILLIPS: It was, and he was mirandized and signed a waiver at that time.

THE COURT: Mr. Bender, when you made these statements to the FBI and the United States Postal Service, had you in fact been advised of your rights, your miranda rights to remain silent, to have counsel present at those things?

A.      Yes, ma'am.

Q.      Were any threats or promises given to you to get you to make that statement?

A.      No, ma'am.

Q.      Mr. Bender, you have heard Mr. Phillips outline briefly certain of the facts that the government would expect to prove at trial.  Are those facts substantially correct?

A.      For the most part, yes, ma'am.

MR. STOFFREGEN: Your Honor, I think Mr. Bender takes issue with the assertion of the government that some photographs or images were taken to, taken

to the victim's school and left.  And he doesn't want to make a big production out of it, but I feel like I should let the Court know we do take issue with that particular assertion.

That is all we have at this time, Your Honor.

MR. PHILLIPS: Your Honor, if I could just respond briefly.  At sentencing, the government would produce evidence as to that and the government would reserve the right to present additional evidence relevant at sentencing.

THE COURT: Thank you.  How do you plead as to these charges against you?

THE DEFENDANT: Guilty.

THE COURT: Did you do the things that Mr. Phillips said that you did?

THE DEFENDANT: Yes, ma'am, I did what anybody would do that is engaged and married.  I didn't know any of that was against the law.

We got married because we loved each other.  I was not aware that there was a law against this.

THE COURT: Mr. Bender, are you telling me and the Court that you did not think there was anything wrong with engaging in sexual conduct with a fourteen year old girl and videotaping that?

THE DEFENDANT: She was my fiancee and she was going to be my wife and basically it was her idea.  I didn't think anything personal or private between a man and his wife was to be a  - -

(Plea Transcript at 16-22).[7]

Further direct evidence of Defendant's guilt came from the tapes made by Defendant and reviewed by the court.  Those tapes clearly belie any actual innocence of the Defendant.

**Equitable Tolling**

To the extent the defendant is asserting that his claims are due further review on the basis

_____

[7]The transcript is located at document 36.

of equitable tolling, the law is clear.  The Eleventh Circuit Court of Appeals has held that "equitable tolling is appropriate when a prisoner's § 2255 petition is untimely because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence."  *Johnson v. United States*, 340 F.3d 1219, 1226 (11th Cir. 2003), *citing Drew v. Department of Corrections*, 297 F.3d 1278, 1286 (11th Cir. 2002) and *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999).  The court has "emphasized, however, that equitable tolling applies only in truly extraordinary circumstances."  *Johnson*, *id.*, *citing Jones*, 304 F.3d at 1039-40; *Drew*, 297 F.3d at 1286.  Bender bears the burden of establishing that he is entitled to this extraordinary relief.  *See Helton v. Secretary for Department of Corrections*, 259 F.3d 1310, 1313-14 (11th Cir. 2001).

The facts of this case do not warrant a finding that the defendant's delay in filing his motion was the result of extraordinary circumstances that were beyond his control and unavoidable even with due diligence.  Although the defendant has continually complained that his counsel did not provide him with a copy of the denial of writ of certiorari and the notice of denial of the same, it is clear that as of at least June 10, 2005, he knew that his writ of certiorari had been denied by the United States Supreme Court.  (See Doc. 63 at Stoffregen letter (The third page of the April 5, 2005 letter from Stoffregen to Carol M. Wright, which the defendant attached to his pleading, clearly demonstrates that the writ had been denied.)).  Additionally, on April 1, 2005, the court informed the defendant of the necessity of filing his § 2255 motion in a timely manner.  Thus, he is not entitled to equitable tolling of the limitations period.

## The Merits[8]

In his first claim, the defendant asserts that his conviction is premised on illegally obtained evidence. Specifically, he states that the "[e]vidence was obtained by [an] improper search warrant, and through permission obtained from [the] defendant while under the influence, which violates his 5th Amendment rights against self-incrimination." (Motion at 5). The court does not find this claim sufficient. It is conclusory and unsupported by any of the evidence before the court. To the contrary, nothing warrants a conclusion that any evidence was obtained in violation of the Fourth Amendment.

---

[8]Supreme Court precedent is clear "that claims not raised previously at trial or on direct appeal although previously available, are barred by procedural default absent [a] showing of cause and actual prejudice." (*United States v. Frady*, 456 U.S. 152, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982)). The Eleventh Circuit Court of Appeals similarly has stated:

> Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding. *See Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir. 1989) (and the cases cited therein), *cert. denied*, 494 U.S. 1018, 110 S. Ct. 1322, 108 L. Ed. 2d 498 (1990). A ground of error is usually "available" on direct appeal when its merits can be reviewed without further factual development. *Compare United States v. Arango*, 853 F.2d 818, 823 (11th Cir. 1988) (an allegation of ineffective assistance of counsel must be raised by collateral attack as opposed to direct appeal because of the necessity to develop a factual basis for its validity through a hearing), *with United States v. Andrews*, 953 F.2d 1312, 1327 (11th Cir.) (claims of ineffective assistance may be considered on direct appeal where there is sufficient evidence on the record to resolve the issue), *cert. denied*, 505 U.S. 1210, ----, 112 S. Ct. 3008, 3048, 120 L. Ed. 2d 882, 915 (1992). When a defendant fails to pursue an available claim on direct appeal, it will not be considered in a motion for § 2255 relief unless he can establish cause for the default and actual prejudice resulting from the alleged error. *Cross v. United States*, 893 F.2d 1287, 1289 (11th Cir.), *cert. denied*, 498 U.S. 849, 111 S. Ct. 138, 112 L. Ed. 2d 105 (1990). Alternatively, under the fundamental miscarriage of justice exception, "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 2649, 91 L. Ed. 2d 397, 413 (1986). On the other hand, prior disposition of a ground of error on direct appeal, in most cases, precludes further review in a subsequent collateral proceeding. *See United States v. Hobson*, 825 F.2d 364, 366 (11th Cir. 1987), *vacated on other grounds*, 492 U.S. 913, 109 S. Ct. 3233, 106 L. Ed. 2d 581 (1989).

*Mills v. United States*, 36 F.3d 1052, 1055-56 (11th Cir. 1994), *cert. denied*, 514 U.S. 1112, 115 S. Ct. 1966, 131 L. Ed. 2d 856 (1995).

The defendant's first, third, sixth, and seventh claims, dealing with the seizure of evidence, his confession, the testimony and evidence presented, and the jurisdiction of this court were known to the defendant at the time of his plea, sentencing, and direct appeal. They are therefore procedurally barred from further review. The defendant has not argued or demonstrated cause and prejudice or a miscarriage of justice to allow further review. Additionally, as is demonstrated below, to the extent the claims are considered a part of the defendant's assertion that counsel was ineffective, the record does not support such arguments.

In his second claim, the defendant asserts that his sentence was improperly enhanced in violation of the Supreme Court's holding in *United States v. Booker/Fanfan*.[9]  The Eleventh Circuit Court of Appeals has held that the Supreme Court's holding in *Booker* that the Federal Sentencing Guidelines were subject to the jury trial requirements of the Sixth Amendment and that the Guidelines could not be mandatory did not apply to cases on collateral review.  *In re Anderson*, 396 F.3d 1336 (11th Cir. 2005);[10] *Varela v. United States*, 400 F.3d 864, 867-68 (11th Cir.), *cert. denied*, 529 U.S. 1122, 126 S. Ct. 312, 163 L. Ed. 2d 269 (2005).  Accordingly, the defendant is entitled to no relief on this claim.

In his third claim, the defendant asserts that his conviction was obtained through the use of a forced confession.  Specifically, he asserts that his statement was taken before urinalysis showed that the defendant was under the influence of marijuana, non-prescribed drugs, and alcohol.  (Motion at 5).  Once again, the defendant has offered nothing to demonstrate that he was in any way incapacitated so as to have made his statement inadmissible.  To the contrary, his allegations are simply conclusory.

In his fourth claim, the defendant asserts that his guilty plea was taken at a time the defendant was suffering from "physical/psychological abuse and over-medication."  Specifically, he asserts that he "was physically and psychologically abused by [an] assault at the facility. . . . He was denied proper and adequate medical and dental treatment for injuries that occurred due to the direct negligence of the staff.  [He] was grossly overmedicated [sic] and transported by means that intentionally aggravated his physical conditions [sic] after the staff had been told of [the

---

[9]*United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005).

[10]The court notes that both *Dean* and *Anderson* involved successive motions.

13

severity] of his condition." (Motion at 6). He offers various medical records and other documents in support of this contention. However, the court has reviewed the plea transcript. Nothing in it even remotely suggests that the defendant did not understand what he was doing and the consequences of the plea. Additionally, had the court observed even the slightest inclination that the defendant was not in a physical or psychological condition to enter the plea, the proceeding would have been stopped. The court observed nothing in the defendant's demeanor that suggested any such difficulty.[11] Accordingly, the court finds this claim to be without merit.

In his fifth claim, the defendant asserts that he was denied effective assistance of counsel in that his counsel was deficient because he (1) failed to investigate certain evidence, including (a) a Jefferson County Sheriff's report wherein the victim "admits to drug use during sex with her friends, but denies any drug use or any type of sex with [the defendant];" (b) video evidence wherein the victim "originally initiated sex with [the defendant] on the 'first night' they met;" (c) video evidence showing "no sign of any drugs or alcohol present other than one scene"; and (d) video evidence that the victim gave perjurous testimony; (2) disregarded and ignored all communication with the defendant; (3) did not prepare him for his court appearances; and, (4) did not investigate the victim or other witnesses' criminal, juvenile, or DHR records.

The Eleventh Circuit Court of Appeals has consistently reiterated the familiar standard for reviewing claims of ineffective assistance of counsel. It provides:

---

[11]The court notes that the defendant, while under oath, stated that he had not taken or received any medication, drugs, intoxications, or narcotics within the preceding seventy-two hours. (Plea Tr. at 3). He also stated that he did not have any mental impairment that prevented him from understanding and responding to the court's questions. *Id.* Finally, well into the plea proceeding, he stated that there was nothing that prevented him from understanding what the court and his counsel were discussing with him. *Id.* at 11.

The defendant must show that counsel's performance fell below constitutional standards and that his defense was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). Ineffective assistance exists if: (1) counsel's performance was objectively unreasonable; and (2) a reasonable probability exists that the outcome would have been different absent the deficiency. *Id.* at 691, 104 S. Ct. at 2066. There is a strong presumption that counsel's performance was reasonable and adequate, with great deference shown to choices dictated by reasonable trial strategy. *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). Our review of an ineffective-assistance-of-counsel claim is from the perspective of defense counsel, and we consider the facts "as they were known to counsel at the time of the representation." *United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir. 1992).

*Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001), *cert. denied*, 534 U.S. 1167, 122 S. Ct. 1185, 152 L. Ed. 2d 126 (2002). This analysis applies to cases involving guilty pleas. *Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). In a guilty plea case, the first prong of the test remains the same, and the second prong is that but for counsel's errors, defendant would not have pled guilty and would have gone to trial. *Id.*, 474 U.S. at 59, 106 S. Ct. at 370-71.

Considering the defendant's arguments, the court finds that he is not entitled to any relief on this claim. First, no evidence suggests that counsel's performance was objectively unreasonable. This is particularly true because of the strength of the evidence against the defendant. The United States had the physical evidence in the form of the tapes Defendant made, the testimony of the victim, and the statement of the defendant. Second, Defendant has not shown the requisite prejudice. Thus, the defendant is entitled to no relief on this claim.

In his sixth claim, the defendant asserts that the prosecutor presented false testimony, suppressed beneficial evidence, presented misleading arguments in opening and closing arguments, and presented "biased" evidence. The defendant further asserts that this evidence

was presented by the prosecution to obtain the upward departure under the Sentencing Guidelines.  These conclusory allegations are insufficient to support a claim for relief.

In his seventh claim, the defendant asserts that the trial court lacked jurisdiction to hear the case.  The defendant argues that "Title 18 is unconstitutional, [his] sentence violates due process of law, and the Court has no authority to administer punishment."  (Motion at Attachment at 2).  The defendant further asserts that "without a specific constitutional grant of jurisdiction to impose sentence, this court must vacate and set aside said [his sentence]."  *Id*. at 3. These claims are patently without merit and due to be denied.

Finally, in his eighth claim, he asserts that he was denied effective assistance of counsel on appeal.  Specifically, he asserts that "counsel refused repeated requests for information concerning [the] direct appeal, and [the w]rit of [c]ertiorari . . ., withheld time-critical information concerning [the] dates of [the writ of certiorari] and the [c]ourt's response in an effort to 'time-bar' [the defendant] from all subsequent motions."  (Motion at Attachment at 3). Upon consideration, the court finds this conclusory claim to be insufficient as a matter of law.

## CONCLUSION

Premised on the foregoing, the defendant's motion to vacate, set aside, or correct his sentence (doc. 1 in 05-08066) is due to be denied.  An order in accordance with this finding will be entered.

**DONE**, this the 21st day of March, 2007.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE